# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00301-MSK

ASA MEEK,

      Applicant,

vs.

WARDEN FALK, SCF, and,
JOHN SUTHERS, The Attorney General of the State of Colorado,

      Respondents.

---

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

---

      This matter comes before the Court on Petitioner Asa Meek's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. # 1).[1]  Having considered the Application and Respondents' Answer (Doc. # 17),[2] along with the state court record, the Court

      **FINDS** and **CONCLUDES** that:

### I.  Jurisdiction

      The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 2254 and 1331.

### II.  Background

      The Petitioner was convicted in state court of one count of robbery and one count of theft (between $500 - $15,000).   The Colorado Court of Appeals summarized Petitioner's trial proceedings as follows:

---

[1] Because the Petitioner appears pro se, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21(1972).  However, the Court does not serve as his advocate. *See Hall v. Bellman*, 935 F.2d 1106, 1110 (10th Cir.1991).

[2] Petitioner did not file a traverse.

[Petitioner] was prosecuted for robbery and theft of over $3100 from a bank in Edwards based on (1) the eyewitness testimony of several bank employees; (2) a surveillance videotape; (3) the testimony of a third party who, though not at the bank the day of the incident, immediately recognized [Petitioner] as the person depicted in several photo stills of the robbery that appeared in the local newspaper; and (4) several similarities between a known writing of [Petitioner's] and the note the robber passed to a bank teller. However, no evidence was presented that the money, jacket, or hat the robber was depicted as wearing in the surveillance tape were ever found by police.

Following the return of the jury's verdicts, the trial court separately determined that [Petitioner] had, on five prior occasions, been convicted of felonies and, accordingly, sentenced him under the habitual criminal statute to a term of twenty-four years imprisonment on the robbery count. The court also sentenced him to a concurrent term of six years imprisonment on the theft count.

*See People v. Meek*, No. 06CA2504 (Colo. App. June 25, 2009) (unpublished decision) (# 11-2, at 2-3).[3]

The state appellate court affirmed the Petitioner's convictions on direct appeal. (*See* # 11-2). Petitioner's request for certiorari review by the Colorado Supreme Court was denied on November 16, 2009.

Petitioner commenced this action on February 3, 2012. He raises five claims in the Application, asserting the following constitutional violations by the state trial court: (1) the admission of an out-of-court identification that was based on an unduly suggestive photo lineup deprived him of his rights to due process and a fair trial, as guaranteed by the Fifth and Fourteenth Amendments; (2) the admission of identification evidence resulting from an unduly suggestive one-on-one show-up denied him his rights to due process and a fair trial; (3) the trial court prevented him from introducing alternative-perpetrator evidence, in violation of his constitutional rights to due process and to present a defense; (4) there was insufficient evidence

---

[3]For ease of reference, the Court's citation to documents filed in this case includes the page numbers assigned to the documents by the Court's electronic filing database.

to prove beyond a reasonable doubt his prior felony convictions, which were used to enhance his sentence under Colorado's habitual offender statute, in violation of his rights under the Fifth, Sixth and Fourteenth Amendments; and, (5) he was denied a jury trial on the habitual criminal counts in deprivation of due process.  (# 1, at 5-7).

The Court finds, and Respondents concede (# 11, at 7), that the Application was timely filed under 28 U.S.C. § 2244(d).  The Court further finds, and Respondents concede (*id.* at 8), that Petitioner exhausted state court remedies for each of his claims by presenting the issues to the state courts in his direct appeal proceeding as violations of federal law.  *See* 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir.1994).

### III.   Legal Standard

Pursuant to 28 U.S.C. § 2254(d), a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Petitioner bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question the court must answer under § 2254(d)(1) is whether Petitioner seeks to apply

a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). If a clearly established rule of federal law is implicated, a court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404–05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard [v. Boone]*, 468 F.3d [665,] 669 [(10th Cir.2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' " *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407–08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

The court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409–10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

evaluating whether a rule application was unreasonable requires considering the

> rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (internal quotation marks omitted).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786–87.

Claims asserting factual errors are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows the court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the court presumes that the state court's factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence.

## IV. ANALYSIS OF MERITS

### A.  Claims One and Two

In claims one and two, Petitioner asserts that he was denied his rights to due process and a fair trial, as guaranteed by the Fifth and Fourteenth Amendments, when the trial court admitted identification evidence that resulted from: (1) an unduly suggestive photo lineup; and, (2) an unduly suggestive one-on-one show-up. (# 1, at 5-5).

A claim that admission of identification evidence violates a criminal defendant's right to due process requires a two-tier analysis. First, the Petitioner must prove that the identification procedure was unnecessarily suggestive. *See English v. Cody*, 241 F.3d 1279, 1282 (10th Cir. 2001) (citing *United States v. Wade*, 388 U.S. 218, 240 n. 31 (1967)); *Grubbs v. Hannigan*, 982 F.2d 1483, 1489 (10th Cir.1993). If the Petitioner meets his burden, the Government must demonstrate that the identification was reliable despite the suggestive procedure. *English*, 241 F.3d at 1283; *Grubbs*, 982 F.2d at 1489–90 (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). It is only necessary to reach the second prong of the inquiry if the procedure was impermissibly suggestive. *English*, 241 F.3d at 1283.

When the police have used a suggestive eyewitness identification procedure, "reliability is the linchpin in determining" whether an eyewitness identification may be admissible, with reliability determined according to factors set out in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). *See Manson,* 432 U.S. at 114. The factors bearing on reliability include: the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. *Neil*, 409 U.S. at 199-200. The federal court must weigh these factors against "the corrupting effect of the suggestive identification itself" to determine whether the identification testimony should have

6

been suppressed. *Manson*, 432 U.S. at 114.  Ultimately, the court's task is to decide whether "under all the circumstances of [the] case, there is 'a very substantial likelihood of irreparable misidentification.'" *Id.* at 116 (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). *See also Kirby v. Illinois*, 406 U.S. 682, 691 (1972) (Only when a pre-trial identification procedure is so unnecessarily suggestive that it is "conducive to irreparable mistaken identification" does the procedure violate due process).

### 1.  The identification procedures

Less than two hours after the robbery, police officers showed a six-person photo array separately to three bank employees.  The first employee (the teller whom the robber had approached directly) stated she was 50% certain that Petitioner (photo # 6) was the robber; the second employee (who was standing in the teller unit next to the first employee) was 70% certain Petitioner  was the robber; and, the third employee identified the individual in photo #3 or photo #6. (State Court R. 3/22/06 Hrg. Tr. at 72-73, 75, 77-78, 83, 86-87; *see also* # 11-2, at 3-4).

The day after the robbery, the police took the second employee on a drive-by look at the Petitioner, who was on a porch, wearing a ball cap,[4] and standing next to one uniformed sheriff's deputy and one plain clothes officer.  (State Court R. 3/22/06 Hrg. Tr. at 16-19; 30-32, 83-85) . The witness informed the authorities, "That's him," (the person who robbed the bank).  (*Id.* at 85).

### 2.  Suppression proceeding in the trial court

Petitioner moved to suppress any identification evidence from the three witnesses as the

---

[4]Witnesses had identified the robber as wearing a ball cap.  (State Court R. 3/22/06 Hrg. Tr. at 79; 5/1/06 Trial Tr., at 39, 107).

product of unduly suggestive identification procedures.  (State Court R., File, at 62-63, 64-65).

With respect to the photo array, Petitioner argued that it was unduly suggestive because he was

only one of two individuals depicted with a significant identifying trait of the robber, a

mustache. (State Court R., 3/22/06 Hrg. Tr. at 105-06).  Petitioner further asserted that the drive-

by identification was unduly suggestive because it was a one-on-one show-up.  (*Id.* at 104-05;

State Court R., File, at 62).

The trial court held a hearing at which the sheriff's officers who conducted the pretrial

identification procedures testified.  (*See generally* State Court R., 3/22/06 Hrg. Tr.).   The trial

court denied Petitioner's motion to suppress the identification evidence, but the court's ruling

addressed only the photo array and not the drive-by procedure.  The trial court determined:

> [I]t was an appropriate photo display. There was not a procedure that was
> unnecessarily suggestive or conducive to misidentification. The photos in the
> folder are all very similar in age and other characteristics. Background is identical
> on all of the photographs, and there is nothing to make one photo stand out above
> or beyond the other photos in the display.
>
> Looking at the five factors, the witnesses did all have the ample opportunity to
> observe the suspect. And the recollection, as they related to the officer, was based
> on their observations and not upon any inappropriate procedure.

(*Id.* at 109).

### 3.  State appellate court proceeding

The Colorado Court of Appeals resolved Petitioner's claim under the standard set forth in

*Simmons*, 390 U.S. at 384.  (# 11-2, at 5).   The state appellate court made the following factual

findings and legal determinations:

> After reviewing the photo array, we, like the trial court, conclude that
> there is nothing about it to make [Petitioner] stand out from the other men. While
> [Petitioner] is shown with a mustache, a feature of the robber described by
> virtually all the witnesses, two other men in the photo array (numbers 3 and 4) are

8

likewise depicted with a mustache or facial hair above the upper lip. [State case law citations omitted]. [Petitioner's] picture could not, then, be said to contain any uniquely suggestive features directly related to an important identification factor.

We are, however, troubled by the unnecessary suggestiveness of a drive-by identification procedure in which the person to be viewed stands next to only two people, one of whom is a uniformed officer.  No justification or reason is evident to us why such an inherently suggestive procedure was used, as opposed to, say, a lineup of several individuals.

As noted above, even an impermissibly suggestive identification procedure will not result in the exclusion of identification evidence if that evidence is shown to be reliable despite the improper suggestiveness. Here, even assuming that the drive-by identification procedure and (even) the photo array were impermissibly suggestive, the witnesses' identifications of [Petitioner] would nonetheless be admissible because they bore sufficient indicia of reliability.

Here, with respect to the witnesses' opportunity to view the criminal, one officer testified, without contradiction, that, from his review of the surveillance tape, (1) the first employee was in direct contact with, and only two feet from, the robber for "probably a minute or a couple of minutes"; (2) the second employee, who was located right next to the first employee's work station, was able to notice, for at least a few seconds, the robber get out of the customer service line and walk toward the first employee; and (3) the third employee, who was stationed about eight to ten feet away from the first employee, observed the robber over a period of fifteen to twenty seconds come into the bank, wait to be helped, and then approach and be acknowledged by the first employee. In each instance, then, the witness had an adequate opportunity to view the criminal at the time of the crime. [State case law citations omitted].

With respect to the witnesses' degree of attention, there was no evidence presented as to the first employee. Nonetheless, as the one most directly involved in the incident, we can presume that she would not have been inattentive. [State case law citations omitted].  An officer testified that, from his review of the surveillance videotape, the second employee did not appear distracted in his viewing of the robber and that the third employee was probably more attentive than normal because the robber appeared to be standing waiting for assistance.

With respect to the accuracy of the witnesses' prior description of the criminal, one employee described the robber to the officer as being 5'1" tall; the other two employees described him as being 5'4" to 5'6" tall. All three employees described the robber as being an older (age fifty to sixty) white male, weighing

approximately 160 to 170 or 175 pounds, with a mustache, scraggly light-colored hair, a potbelly, and a distinctive slow and unsteady walk, like someone who appeared, but was not in fact, intoxicated. This description was, as one officer put it, "pretty close to a match" with [Petitioner]: [Petitioner] was 5'5" or 5'6" tall, weighed 165-170 pounds, had a pot belly, and a slow, distinctive walk like that described by the witnesses.

With respect to the witnesses' level of certainty, the record shows that the three witnesses initially identified defendant's picture with less than absolute certainty. But, according to one of the testifying officers, the next day, when the second employee saw [Petitioner] in person, he (the second employee) was certain of his identification. Similarly, the first and third employees also soon became convinced that [Petitioner's] photo depicted that of the robber. The first employee came forward and told authorities that, upon further reflection the night of the robbery, she was absolutely certain that photo number 6 was the robber (she attributed her initial uncertainty to being caught up in the emotions of the event). The third employee also came forward and told the authorities that, after looking at the surveillance videotape of the robbery, she was certain that number 6 was the robber.

With respect to the length of time between the crime and the confrontations, we note that, according to the undisputed evidence presented at the suppression hearing, the photo arrays took place within an hour and a half to two hours after the robbery and the drive-by identification took place the very next day.

In our view, the only factor detracting from the reliability of the witnesses' identification testimony was the relative lack of certainty in the witnesses' initial identification of [Petitioner's] picture. But this circumstance affects only the weight, not the admissibility, of the witnesses' identification testimony. [State case law citations omitted].

As the United States Supreme Court noted in *Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977), a single photo show-up case: "We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature."

Under the totality of the circumstances here, we conclude that neither the photo array nor the drive-by show-up created a substantial likelihood of irreparable misidentification by the witnesses. Consequently, their identification evidence was admissible. [State case law citations omitted].

(# 11-2, at 8-14).

The Colorado Court of Appeals first determined that the photo array was not unduly suggestive.   The Supreme Court has not articulated what factors are relevant to determining whether an identification procedure is unduly suggestive.   Consequently, a state court's determination on the suggestiveness of the identification procedure cannot be regarded as contrary to clearly established Supreme Court precedent. *See Lockyer v. Andrade*, 538 U.S. 63, 73–74 (2003) (state court's determination that a particular sentence for a term of years did not violate Eighth Amendment not contrary to clearly established federal law where Supreme Court case law lacked clarity on particular factors to be employed).   A federal habeas court can set aside the state court's determination on the issue of whether the identification was unduly suggestive only where, presuming the correctness of the state court findings, it finds the determination to be objectively unreasonable. 28 U.S.C. § 2254(e)(1); *Lockyer*, 538 U.S. at 76.

In determining whether a photo lineup is unduly suggestive, the Tenth Circuit considers a number of factors, including the size of the array, the manner of its presentation, and the details of the photographs.  *See United States v. Smith,* 156 F.3d 1046, 1050 (10th Cir.1998).   "[T]he number of photographs in an array is not itself a substantive factor, but instead is a factor that merely affects the weight given to other alleged problems or irregularities in an array." *United States v. Sanchez*, 24 F.3d 1259, 1262 (10th Cir.1994).   A photo array containing six photos is "sufficiently small to weigh heavily in the balance of factors to be considered." *Smith*, 156 F.3d at 1050 (quoting *Sanchez*, 24 F.3d at 1263).   The Court therefore must look to other factors to see if the size of the lineup rendered it impermissibly suggestive.

The evidence shows that the manner in which the police detective presented the lineup

11

was not suggestive.  The detective told the witnesses that a suspect may or may not be present in the line-up and he specifically instructed all of the witnesses that they were under no obligation to make an identification.  (State Court R. 3/22/06 Hrg. Tr. at 73; 5/1/06 Trial Tr. at 58; 5/2/06 Trial Tr. at 13-14).   The detective also took steps to ascertain the witnesses' degrees of certainty in identifying the Petitioner.  (*Id.*, 3/22/06 Hrg. Tr. at 74-75, 83, 87; 5/1/09 Trial Tr. at 57-58; 113-14; 5/2/06 Trial Tr. at 13-14).   Finally, all of the witnesses viewed the photo lineup separately.  (*Id.*, 5/2/09 Trial Tr. at 119-20). Based on this evidence, the Court finds that the photo line up was not presented to the witnesses in a suggestive manner.

The Court next considers the details of the photographs.  Petitioner argues that the photo array was unduly suggestive because all of the witnesses described the robber as having a mustache, but only Petitioner and one other male in the array had mustaches.  (# 1, at 5, 22). According to the record, the display of black and white photographs was of Caucasian men of similar age, with light-colored hair.  (State Trial Court R. 3/22/06 Hrg. Tr. at 69-72).   Only three of the men depicted had facial hair. (*Id*. at 72).[5]  However, differences in facial hair between the photographed individuals does not render the line-up unnecessarily prejudicial.  *See, e.g., United States v. Thurston*, 771 F.2d 449, 452-53 (10th Cir.1985) (finding identification procedure not unduly suggestive where defendant was the only one in six photographs to have a beard and whose hair was braided); *United States v. Shoels*, 685 F.2d 379, 385 (10th Cir.1982) (holding that a photographic array of men with facial hair, where the suspect had been described as without facial hair, was not unnecessarily suggestive).

The Court finds that the Colorado Court of Appeals reasonably determined, based on the

---

[5] Two of the men had a mustache and one had a beard. *Id.* at 95, 96.

evidence presented in the state court proceeding, that the photographic line-up was not unduly suggestive.  The Court further finds that the state appellate court's decision was a reasonable application of federal law.  As such, Petitioner's first claim fails.

For Petitioner's second claim (and even for the first claim, assuming that the photo array was unduly suggestive), the Court finds that the Colorado Court of Appeals reasonably determined that each bank employee's identification of Petitioner was sufficiently reliable under the *Simmons* totality of the circumstances test.  The state appellate court made detailed factual findings under the *Neil v. Biggers* factors which are entirely supported by the uncontroverted evidence presented to the state trial court and weigh strongly in favor of the reliability of the witnesses' identification of Petitioner.  (*See* State Court R., 3/22/06 Hrg. Tr. at 62-91; 5/1/06 Trial Tr. at 58; 5/2/06 Trial Tr. at 13-14.).  Accordingly, the Colorado Court of Appeals decision was not contrary to, or an unreasonable application of, clearly established federal law. Furthermore, when out-of-court identifications by witnesses are admissible at trial, in-court identifications made by those same witnesses are also admissible.  *See Romero v. Tansy*, 46 F.3d 1024, 1032 (10th Cir. 1995).  Petitioner therefore is not entitled to habeas relief for his first and second claims challenging the trial court's admission of identification evidence.

**B.  Claim Three**

For his third claim, Petitioner contends that the trial court precluded him from introducing alternative-perpetrator evidence, in violation of his constitutional rights to due process and to present a defense.  (# 1, at 6).

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution

guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane*

*v. Kentucky*, 476 U.S. 683, 689–690 (1986) (internal quotations and citation omitted).  However,

"[t]he right may, in appropriate cases, bow to accommodate other legitimate interests in the

criminal trial process." *Rock v. Arkansas*, 483 U.S. 44, 55 (internal quotations omitted).

> While the Constitution thus prohibits the exclusion of defense evidence under
> rules that serve no legitimate purpose or that are disproportionate to the ends that
> they are asserted to promote, well-established rules of evidence permit trial judges
> to exclude evidence if its probative value is outweighed by certain other factors
> such as unfair prejudice, confusion of the issues, or potential to mislead the jury.

*Holmes v. South Carolina*, 547 U.S. 319, 326 (2006) (internal quotation marks and citations

omitted); *see also Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an

unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible

under standard rules of evidence.").  Consistent with these constitutional principles, evidentiary

rules regulating admission of alternate suspect evidence are widely accepted.  *Holmes*, 547 U.S.

at 327.  In *Holmes*, the Supreme Court held that evidence proffered by a criminal defendant to

show that someone else committed the crime with which he or she is charged may be excluded

"where [the evidence] does not sufficiently connect the other person to the crime, as, for

example, where the evidence is speculative or remote, or does not tend to prove or disprove a

material fact in issue at the defendant's trial." *Id*. (internal quotation marks omitted).

Under Colorado law, a defendant may present evidence that someone else might have

committed the charged offense, subject to and limited by well-established rules of evidence.

*People v. Muniz*, 190 P.3d 774, 780 (Colo. App. 2008) (citing *Holmes*, 547 U.S. at  326-27);

"Evidence of alternate suspects may be excluded . . . if it only creates an unsupported inference

or a possible ground for suspicion." *Id.*  Evidence of another person's motive or opportunity to

commit an offense "is not admissible without proof that such other person committed some act directly connecting him with the crime." *People v. Mulligan*, 568 P.2d 449, 518 (1977) (internal quotation marks and citation omitted). When "the asserted direct connection is the alternate suspect's commission of a similar crime, the evidence of the alternate suspect's motive or opportunity is admissible only if '[t]he details of the two crimes [are] distinctive enough to represent a 'signature' of a single individual.'" *Muniz*, 190 P.3d at 780 (quoting *People v. Perez*, 972 P.2d 1072, 1074-75 (Colo. App. 1998)).

Before trial, Petitioner sought to discover and present evidence of a bank robbery that was committed in Vail, Colorado, while he was in jail. (State Court R., File, at 23, 172-73). Petitioner argued that the Vail robbery was similar to the robbery for which he had been charged in Edwards, Colorado, and, therefore, the Vail robbery was relevant to show that someone else (i.e., the Vail robber) committed the Edwards robbery. (*Id.*, 3/22/06 Hrg. Tr. at 125; 4/26/06 Hr. Tr. at 7-8). At a pre-trial hearing, the trial court reviewed the video surveillance tapes of the Vail and Edwards bank robberies. (*Id.*, 4/26/06 Hrg. Tr. at 1-3, 5-6). The prosecution argued that the video surveillance tapes showed that the robber was not the same person based on the following:

> The . . . surveillance video of the Vail robbery is rather quick, but when you look at the actual person shot in the still frame in the middle part of that video that we were able to freeze frame you could see that the person is taller, is upright, there's no problem walking, has a different demeanor and walk about them. They were dressed nowhere close to the same. They wore stuff to disguise their face. They had gloves on. They had a beanie thing that covered their head, dark, and was wearing sunglasses, whereas the individual in the Edwards robbery, I think the court can see clearly did not look like the person in the Vail robbery. He was slunched over the entire time. . . . [H]is walk is noticeably different. He's not as tall. He's not as big as the man that was in the Vail robbery. [sic]

(*Id.* at 6-7). The trial court agreed: "Based on the Court's review of the two surveillance tapes it

is clear . . . that they are two different people involved in two different occurrences. The Court does not find that there is any similarity between the first occurrence and the individual that committed the second robbery." (*Id.* at 8).

On direct appeal, the Colorado Court of Appeals rejected the Petitioner's claim that the trial court's ruling violated his constitutional right to present a defense, pursuant to the following reasoning:

> We have reviewed the surveillance tapes of both robberies. Although the videotape of the Vail robbery is not of the best quality, we nonetheless observe that (1) the Vail robber's mannerisms were noticeably different from those of the Edwards robber (i.e., the Vail robber walked with an upright gait and taller posture, whereas the Edwards robber walked hunched over, with a limping gait, and slumped posture); (2) the Vail robber appeared to have worn something on his head, as well as dark sunglasses and gloves, presumably to disguise his identity, whereas the Edwards robber wore only a baseball cap; and (3) the Vail robber approached the bank tellers and handed them a bag along with a note, whereas the robber here pulled the note out of his coat pocket and did not bring a bag. *Cf.* [*People v.* ] *Madrid*, 179 P.3d [1010,] 1014 [(Colo. 2008)] (where there are no disputed facts outside the audio or video recording controlling the issue of suppression, appellate court is in a "similar position as the trial court" and, consequently, could independently review the facts to determine whether trial court acted properly in light of the controlling law).

> Based on our review of the videotapes, we conclude that the trial court did not act in a manifestly arbitrary or unreasonable manner in concluding that the individual who committed the Vail robbery was not the individual who committed the robbery here, and thus, that the evidence of the Vail robbery was inadmissible in this case.

(# 11-2, at 17-18).

The state court's factual findings are presumed correct in this proceeding and Petitioner has not rebutted those findings with any clear and convincing evidence. The state appellate court reasonably concluded, based on the evidence, that the trial court properly applied state law evidentiary rules to deny Petitioner's proffered alternative suspect evidence. The evidence that

Petitioner sought to introduce did not demonstrate that a single individual committed both robberies, or link the alternate suspect to the Edwards, Colorado bank robbery in any way. Furthermore, the Colorado evidentiary rule is consistent with the Supreme Court's description of proper third-party evidence rules in *Holmes* because the focus of the rule is on whether the proffered evidence tends to show that a third-party committed the crime. *See Holmes*, 547 U.S. at 329 (holding unconstitutional a South Carolina third-party evidence rule that focused on the strength of the prosecution's case against the defendant, as opposed to the probative value or the potential adverse effects of admitting the defense evidence of third-party guilt). As such, the Court finds that Colorado Court of Appeals' decision did not run afoul of clearly established federal law. Petitioner therefore cannot prevail on his third claim for relief.

## C.  Claim Four

In claim four, Petitioner asserts that there was insufficient evidence to prove beyond a reasonable doubt the prior felony convictions used to enhance his sentence under Colorado's habitual offender statute. (# 1, at 7).

Under federal law, evidence is sufficient to support a conviction as a matter of due process if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original). In applying the *Jackson* standard, the federal habeas court looks to Colorado law to determine whether Petitioner was properly adjudicated a habitual offender under state law. *See Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004); *see also Titsworth v. Mullin*, No. 10-7078, 415 F. App'x 28, 30-31 (10th Cir. Feb. 7, 2011) (unpublished).

The following evidence of Petitioner's prior convictions was presented to the state trial court:

> [A] "prison packet" containing the five mittimuses from [Petitioner's prior criminal cases] was introduced into evidence at the hearing showing that an Asa Meek was convicted of two felonies (94CR1145, 97CR296), an Asa Melvin Meek, Jr. was convicted of two felonies (94CR1871, 96CR2168), and an Asa M. Meek (a/k/a "Asa Melvin Meeks" a/k/a "Asa Melvin Meeks, Jr.") was convicted of one felony (00CR1515).  The "prison packet" also contained two photographs of defendant that listed his name, date of birth, and an inmate number. In addition, the packet contained two fingerprint cards, each of which included the same name, birth date, and inmate number, and each of which was directly linked, through expert witness testimony, to defendant.

(# 11-2, at 20-21; *see also* State Court R., 9/21/06 Hrg. Tr.).

In addition:

> One of the fingerprint cards specifically referenced the second degree burglary charge (94CR1145) and indicated the date of arrest as December 26, 1996, which matched the date of one of defendant's photographs. Defendant is depicted in that photo as wearing a shirt with the number "92031," the same number listed as the inmate number on all five of the mittimuses.  In addition, the mittimuses cross-reference each other in terms of sentence length and whether the sentences are to be served consecutively or concurrently.

(#11-2, at 21).

The state appellate court concluded that Petitioner's challenge to the sufficiency of the evidence failed based on the following grounds:

> A challenge to the sufficiency of the evidence requires us to determine whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion beyond a reasonable doubt that the [Petitioner] is guilty beyond a reasonable doubt. [*People v.*]*Carrasco*, 85 P.3d [580,] 582 [Colo. App. (2003)].

> To establish guilt on habitual criminal counts, the prosecution must prove beyond a reasonable doubt that the [Petitioner] (1) had been previously convicted as alleged and (2) was the person named in the prior proceeding. § 18-1.3-801, C.R.S. 2008.

"Offering evidence of fingerprint cards and expert testimony linking those prints to the defendant is a valid method for proving" the identity of a defendant for purposes of his prior convictions. [State law citations omitted].  However, a defendant's identity may not be proved simply by showing that the defendant has the same name as the person convicted of the prior crimes, even where the name is unusual. *See De Gesualdo v. People*, 147 Colo. 426, 433-34, 364 P.2d 374, 378 (1961).
. . .

The trial court found that, based upon the[ ] exhibits and the testimony at the hearing, the prosecution had sustained its burden and established beyond a reasonable doubt that [Petitioner] was convicted of the prior counts.

We conclude that there is sufficient evidence in the record to sustain the trial court's finding. The evidence does not indicate, as [Petitioner] argues, that the trial court simply relied on the fact that all the names were similar to find [Petitioner] guilty of the habitual criminal counts. Rather, the evidence linked [Petitioner's photograph, fingerprints, and inmate number to the five mittimuses, which cross-referenced each other.  *See* [*People v.*] *Moore*, [226 P.3d 1076, 1089 (Colo. App. 2009)] (evidence sufficient when based upon fingerprint, inmate number, and photographs); *People v. Cooper*, 104 P.3d 307, 312 (Colo. App. 2004) (evidence sufficient when based upon probation officer testimony, photographs, and certified court records indicating sentences for separate charges were to be served concurrently); *People v. Benton*, 829 P.2d 451, 454 (Colo. App. 1991) (evidence of certified court records of prior convictions with same inmate number, even without fingerprints, held to be sufficient).

(# 11-2, at 19-22).

The Colorado Court of Appeals rejected Petitioner's challenge to the sufficiency of the evidence based on its application of a state law standard similar to the federal standard discussed in *Jackson*. Again, the state appellate court's factual findings are presumed correct and Petitioner has failed to point to any clear and convincing evidence to the contrary.  The Court finds that the Colorado Court of Appeals reasonably determined that the prosecution presented enough evidence to prove the fact of Petitioner's five prior felony convictions under Colorado law.  The state appellate court's determination comported with federal law.  Petitioner thus is not

entitled to federal habeas relief for his fourth claim.

**D.  Claim Five**

Petitioner asserts in claim five that he was denied due process by the trial court's refusal to hold a jury trial in the habitual criminal proceeding.  (#1, at 7).

Prior felony convictions are sentence enhancements, not elements of an offense, and therefore need not be proved to a jury beyond a reasonable doubt.  *Almendarez-Torres v. United States*, 523 U.S. 224 (1998).  The holding in *Almendarez-Torres* has been affirmed in later Supreme Court decisions.  *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt") (emphasis added); *United States v. Booker*, 543 U.S. 220, 244 (2005) (reaffirming the recidivism exception announced in *Apprendi*).

In Petitioner's direct appeal proceeding, the Colorado Court of Appeals rejected his claim that he was entitled to a jury trial on the habitual criminal counts, based on Colorado case law applying *Apprendi* and *Almendarez-Torres*.  (# 11-2, at 18-19).  The Court finds that the state appellate court's ruling was not contrary to or an unreasonable application of applicable Supreme Court cases.  Accordingly, Petitioner is not entitled to federal habeas relief for his fifth claim.

Finally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Petitioner files a notice of appeal he must also pay the full $455 appellate filing fee or file a motion to proceed *in*

*forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

For the reasons discussed above, it is ORDERED that Petitioner Asa Meek's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (# 1) is **DENIED**.  It is

**FURTHER ORDERED** that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right.  It is

**FURTHER ORDERED** that leave to proceed *in forma pauperis* on appeal is denied. Petitioner may file a motion in the Tenth Circuit.

The Clerk of the Court shall close this case.

Dated this 13th day of December, 2013

BY THE COURT:

Marcia S. Krieger
Chief United States District Judge